## Eversole v. Commonwealth.

(Decided November 17, 1925.)

### Appeal from Bell Circuit Court.

1. Homicide—Where Evidence Supported Both Theory of Prosecution and Defense, Manslaughter Verdict Held Not Flagrantly Against Evidence.—In prosecution for murder, where issue was whether defendant shot to protect himself, or as deceased was leaving, and there was substantial evidence to support each theory, a verdict of manslaughter was not flagrantly against evidence.

2. Criminal Law—Self-Defense Instruction Held Not Improper as Leaving to Jury Question of what in Law was Self-Defense.—In prosecution for murder, an instruction to acquit on grounds of self-defense, if evidence showed that, when defendant shot, he believed, or had reasonable grounds to believe, that he was in danger of death or great bodily harm, from which to protect himself, in exercise of reasonable judgment, he believed it necessary to shoot, was not improper, as leaving to jury question of what in law was self-defense.

3. Criminal Law—Court Held to have Given Whole Law of Case.—In prosecution for murder, where court not only instructed on murder, manslaughter, and self-defense, but defined technical terms, and instructed on reasonable doubt as to whole case, and as to degree of offense, it cannot be said that court did not give whole law of case.

M. G. COLSON and D. M. BINGHAM for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHARLES F. CREAL, Assistant Attorney General, for appellee.

Opinion of the Court by Judge Clay—Affirming.

Appellant was convicted of manslaughter and his punishment fixed at seven years' imprisonment.

Appellant and the deceased, Greely Scott, were neighbors. Some chickens belonging to the family of the deceased got into appellant's garden. Max Scott, the

young son of the deceased, became angry at appellant's step-daughter because she threw rocks at the chickens after they had left the garden. According to the evidence for the Commonwealth, appellant took up the quarrel, threatened the boy and his father, and threw some rocks at the boy, one of which struck a little girl, a child of a neighbor. At that time deceased and his older son, Walter Scott, were away from home. When they returned Max Scott told them of the trouble, and thereupon Walter went down the public road to appellant's home and stopped in the road just outside of the yard fence. He states that when he asked appellant about the trouble appellant ran at him with an axe and he drew back a stick to hit appellant. When he did that appellant threw his axe down with an oath and ran to the house to get his gun. When he returned appellant drew the gun back to hit him and he struck appellant with the stick. About this time Greely Scott came up. Both Max Scott and Walter Scott say that they took their father by the arm and suggested that they leave without having trouble. All three turned and started for home and had gone some fifteen or twenty feet when appellant shot Greely. When appellant fired the shot struck Greely Scott in the back below the right shoulder, came out through his collar bone, entered his cheek and then came out through his mouth. Greely Scott fell and died immediately. E. G. Gilbert, who lived a short distance away, says that he was attracted by the talking and saw appellant and Walter Scott striking each other over the yard fence, appellant being on the inside and the boy on the outside. Greely Scott then came up and appellant went in and got his gun. When appellant came out Greely and Walter Scott were standing at the fence and appellant was punching at them with his gun and they were boxing at him. Greely Scott and the boy turned and walked toward their home when appellant raised his gun and fired. After the shot was fired appellant ran toward the railroad. Witness then went to where Scott fell and found him near the corner of the fence and back of the house.

On the other hand, appellant claims that when Walter Scott came up he tried to reason with him, but Walter struck him with a heavy stick, knocking out some of his teeth and severely injuring his jaw. During the difficulty Greely Scott appeared, came into the yard, struck him in the side, fracturing his ribs. He also claims that he was struck on the hip, and that one of his arms was broken.

During the difficulty he was knocked down by Greely Scott, and while down he fired the shot that struck Scott. At that time he was "addled" by the lick on the jaw and did not realize what he was doing. In some respects he was corroborated by other witnesses.

It is at once apparent that the main issue in the case was whether appellant fired after deceased had turned and was leaving the scene of the difficulty, or was knocked down by the deceased and fired immediately to protect himself against further harm, and, there being substantial evidence to support each theory, it can not be said that the verdict is flagrantly against the evidence.

There is no merit in the contention that the self-defense instruction was improper. This case is not like that of Cook v. Commonwealth, 86 Ky. 663, 7 S. W. 155. There the jury were told, in substance, that if the defendant willfully and maliciously "and not in his necessary, or to him reasonably apparent necessary, self-defense," shot and wounded the deceased they should find him guilty, and refused to give any other instruction on the law of self-defense. The court very properly held that the instruction left it to the jury to determine what in law constituted necessary, or reasonably apparent necessary, self-defense; whereas, the defendant was entitled to an instruction defining the law of self-defense. Here, the court gave the following instruction on self-defense:

"Although you may believe from the evidence to the exclusion of a reasonable doubt that the defendant shot and wounded the deceased with a loaded gun and that he then and there died thereby, yet if you shall believe from the evidence that at the time he did so, he believed and had reasonable grounds to believe that he was then and there in danger of death or some other great bodily harm, about to be inflicted on him by the deceased, Greely Scott, or Walter Scott, and that it was necessary or was believed by the defendant in the exercise of a reasonable judgment to be necessary to so shoot and kill the deceased in order to protect himself from such danger, real or to the defendant apparent, then you ought to acquit the defendant on the grounds of self-defense, or the apparent necessity therefor."

This instruction is in the usual form and has been often approved by this court. It does not leave it to the jury to say what in law is self-defense, but tells them

what facts will constitute self-defense, and leaves it to them to say whether or not those facts exist.

The point that the court did not give the whole law of the case is not well taken. The court not only instructed on murder, manslaughter and self-defense, but defined the technical terms employed and instructed on reasonable doubt as to the whole case and as to the degree of the offense.

The indictment is in the usual form and is not subject to criticism.

Judgment affirmed.